IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-579-RJ

TAMMY LYNN WATSON o/b/o
DAVID A. WATSON (deceased),

　　　　　Plaintiff/Claimant,

v.　　　　　　　　　　　　　　　　　　　　　ORDER

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

　　　　　Defendant.

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-26, -28] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Tammy Lynn Watson filed this action on behalf of her deceased spouse, Claimant David A. Watson ("Claimant"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 5, 2013, alleging disability beginning June 16, 2012. (R. 17, 178–81). Both claims were denied initially and upon reconsideration. (R. 17, 69–104). Claimant died on October 4, 2015, and his wife,

Tammy Watson, was made a substitute party. (R. 17, 140–44). A hearing before the Administrative Law Judge ("ALJ") was held on August 17, 2016, at which Tammy Watson, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 17, 35–68). On October 24, 2016, the ALJ issued a decision denying Claimant's request for benefits. (R. 14–34). Ms. Watson then requested a review of the ALJ's decision by the Appeals Council (R. 6), and she submitted additional evidence as part of her request (R. 5). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Ms. Watson's request for review on September 19, 2017. (R. 1–5). Ms. Watson then filed a complaint in this court on behalf of Claimant seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76

2

F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

In this case, Claimant alleges the following errors: (1) the ALJ improperly weighed the medical opinions of Dr. Shehzad Choudry and Dr. Pamela Reid, and (2) the ALJ wrongly determined that Claimant's impairment did not meet Listing 1.04A at step three of the sequential evaluation process. Pl.'s Mem. [DE-27] at 6–16.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since June 16, 2012. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: lumbar degenerative disc disease ("DDD"), right knee arthritis, left carpal tunnel syndrome, bilateral hand tremors and myoclonic jerks, bipolar disorder, and anxiety disorder. *Id.* The ALJ also found Claimant had non-severe impairments of sleep apnea, insomnia, restless leg syndrome, gastroesophageal reflux disease ("GERD"), vitamin D deficiency, hyperlipidemia, hypertriglyceridemia, lacunar infarct, headaches, renal failure, obesity, and chest pain. (R. 20). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in his activities of daily living; moderate limitations in social functioning; and moderate limitations in concentration, persistence, or pace with no episodes of decompensation. (R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations: he must be able to alternate

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

4

between sitting and standing and/or walking every thirty minutes; he can occasionally climb ramps

or stairs; he can never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel,

crouch, and crawl; he can frequently handle objects and finger bilaterally; he can have occasional

exposure to pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas;

he is limited to simple, routine, and repetitive tasks but not at a production rate; he is limited to

simple work-related decisions; he can have occasional interaction with the public and supervisors

and frequent interaction with co-workers; and he would be off task no more than ten percent of the

time in an eight hour workday, in addition to normal breaks. (R. 22). In making this assessment,

the ALJ found Claimant's statements and Ms. Watson's testimony about the intensity, persistence,

and limiting effects of Claimant's symptoms not entirely consistent with the evidence. (R. 27).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements

of his past relevant work as a plywood builder. *Id.* Nonetheless, at step five, upon considering

Claimant's age, education, work experience, and RFC, the ALJ determined Claimant was capable

of adjusting to the demands of other employment opportunities that exist in significant numbers in

the national economy. *Id.*

## V. DISCUSSION

### A.    The ALJ did not err in weighing the opinions of Dr. Choudry and Dr. Reid.

Claimant contends the ALJ improperly discounted the opinions of Dr. Choudry and Dr.

Reid. Pl.'s Mem. [DE-27] at 6–14. The court disagrees.

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R.

---

or leg controls. To be considered capable of performing a full or wide range of light work, a person must have the
ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform
sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for
long periods of time. 20 C.F.R. § 404.1567(b).

§ 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c).[2] In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[3] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-

---

[2] The rules for evaluating opinion evidence for claims filed after March 27, 2017, are found in 20 C.F.R. § 404.1520c, but 20 C.F.R. § 404.1527 still applies in this case.

[3] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

## 1. Dr. Choudry

Claimant contends that the ALJ erred in his assessment of Dr. Choudry's 2013 Medical Source Statement. The ALJ wrote:

> Dr. Choudry's October 2013 Medical Source Statement indicating that the claimant could not do sedentary or light work is not supported by any specific findings on that form and is not consistent with his own reports showing improvements in the claimant's symptoms (Exhibit 12F). Moreover, this opinion addresses an issue that is reserved to the Commissioner of Social Security pursuant to SSR 96-5p.

> . . .

> Little weight is given to the Medical Source Statements of Dr. Choudry and Dr. Reid in October 2013. Dr. Choudry opined that the claimant had moderately severe limitations in maintaining attention and concentration for extended periods, performing activities within a schedule and maintaining regular attendance, completing a normal workday or workweek without interruption due to psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods (Exhibit 12F). Dr. Choudry is a neurologist and pain management specialist, but he is not a psychiatrist or psychologist. Therefore, his opinion regarding the claimant's mental abilities is outside his area of expertise. It is also not consistent with the evidence of record, as described above.

(R. 24, 26). The ALJ thereby gave five reasons why he gave little weight to the Medical Source Statement: (1) it is not supported by specific findings on the form, (2) it is not consistent with Dr. Choudry's reports showing Claimant's improvement, (3) it addresses an issue reserved to the Commissioner, (4) it addresses a field outside of Dr. Choudry's specialty, and (5) it is inconsistent with the other evidence of record. *Id.*

First, the ALJ noted that the form contains no specific findings. An ALJ is entitled to give

7

a form opinion less weight than a narrative opinion. *See Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."); *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9–10 (E.D.N.C. May 24, 2011) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings). Here, Dr. Choudry merely checked boxes. (R. 504). One area of the form invited further comment and allowed Dr. Choudry to describe the rationale for his opinion, but he left that area blank. *Id.* The form contains no specific findings or explanation for Dr. Choudry's opinion, so it was appropriate for the ALJ to discount it.

Second, Dr. Choudry's 2013 opinion that Claimant cannot perform even sedentary work is inconsistent with Dr. Choudry's own later examinations of Claimant. The ALJ notes, "Dr. Choundry reported in April 2014 that surgery for the claimant's back was not recommended and that he ambulated unassisted with a stable, and only mildly antalgic, gait (Exhibit 14F)." (R. 23). Claimant's improved condition is inconsistent with Dr. Choudry's 2013 opinion regarding Claimant's physical limitations.

Third, Dr. Choudry opines on Claimant's ability to perform sedentary and light work and his mental limitations that would affect his ability to meet the demands of a normal work environment. (R. 502–03). Those determinations are reserved to the Commissioner. S.S.R. 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability. . . .

[T]he overall RFC assessment is an administrative finding on an issue reserved to the Commissioner."). Additionally, when a medical source statement uses terms like "sedentary" and "light" work, the regulations caution that the ALJ "must not assume" that the physician understands the administrative definitions of those terms. *Id.*

Fourth, the ALJ states that the form addresses matters outside of Dr. Choudry's expertise. The ALJ found that the form speaks to Claimant's mental abilities, but Dr. Choudry is not a psychologist or psychiatrist. Of the five reasons the ALJ gave for discounting Dr. Choudry's opinion, this one is the least tenable. Dr. Choudry is a neurologist who specializes in pain. The form asks Dr. Choudry to state that, in his opinion, "as a result of pain and/or other subjective symptoms," the Claimant has certain levels of "limitations affecting his ability to meet the demands of sustained work on a regular and continuing basis." (R. 503). It appears that the form speaks to Claimant's limitations as a result of his pain, which is within Dr. Choudry's expertise.

Nevertheless, fifth, Dr. Choudry's opinion is inconsistent with the other evidence of record. Dr. Choudry opined that Claimant could not perform sedentary or light work, even if he could alternate between sitting and standing during the work day. (R. 501–02). However, the evidence of record, as summarized by the ALJ, shows otherwise. In July 2012,

> [T]he claimant complained of a history of low back pain that was aggravated by falling off a ladder and resulted in symptoms radiating into his right leg down to the foot. However, an MRI scan of his lumbar spine showed only a small disc herniation . . . . An MRI scan of his right knee at that time was normal. On physical exam, he exhibited limitations of motion of his lumbar and thoracic spines but no specific areas of tenderness. His gait was normal and he was able to stand on his heels and toes.

(R. 22). In October 2012, December 2012, and January 2013, Claimant complained of back pain, but he had run out of medication. (R. 23). In March 2013, Claimant reported "doing fairly well on Percocet and Flexeril," indicating that his back pain could be managed with medication. *Id.*

Claimant had a flare up of symptoms in April 2013 "after standing at a grill for a long period of time," and he was treated with epidural steroid injections in June 2013. *Id.* Claimant had normal movement at physical exams in October 2013 and March 2014, and in February 2014, "his leg pain was only 'intermittent' and [] he moved from a standing to a sitting position without difficulty." *Id.* Dr. Choudry himself "reported in April 2014 that surgery for the claimant's back was not recommended and that he ambulated unassisted with a stable, and only mildly antalgic, gait." *Id.* In July 2014, Claimant had normal range of motion "with no edema, tenderness, or deformity and a normal gait." *Id.* Moreover, "[h]is musculoskeletal exams were unchanged thereafter through June and July 2015, when he denied having any back or neck pain or sore muscles." *Id.* Claimant had muscle spasms in May 2013, but he "had full 5/5 strenght of his upper and lower extremities, no atrophy, a normal gait and station, normal coordination, and normal sensation and reflexes of all extremities. . . . A nerve conduction study at that time showed only mild left carpal tunnel syndrome." *Id.* The ALJ concluded, "[t]he above-summarized evidence shows that the claimant's back and right knee conditions were aggravated by his fall from a ladder in 2012 but his symptoms had gradually improved by 2013 and 2014 with exacerbations only when he ran out of medications or stood for a long period of time." (R. 24). The ALJ then explained why he included limitations in the RFC for alternating between sitting and standing; frequent but not constant fingering and handling of objects; no climbing of ladders, ropes, or scaffolds; and only occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs. There is substantial evidence that Claimant can perform light work with those limitations, and the evidence of record is therefore inconsistent with Dr. Choudry's opinion that Claimant cannot perform light work even if he could alternate between sitting and standing.

Dr. Choudry's other opinions noted on the form are also inconsistent with the evidence.

Dr. Choudry opined that Claimant's ability to maintain attention and concentration for extended periods was "moderately severe." (R. 503). Claimant was "distractible on exams in August and September 2013," but "[m]ental health treatment notes from November 2013 through April 2014 show he was consistently alert and oriented with normal thought process and content, intact memory, and no evidence of inattentiveness or distractibility (Exhibit 15F)." (R. 21). The evidence of Claimant's mental health treatment shows that he was depressed in September 2012 following "the death of his brother, his mother's stroke, and the loss of his job." (R. 24). He was also "sad, upset, and depressed after being fired from his job" in July and August 2013. (R. 25). However, subsequent exams showed improvement, and "he denied being depressed or anxious in November 2013." (R. 24). Claimant was anxious, hostile, and angry in December 2013 and March 2014, but after April 2014, "the record does not show that he sought or received any mental health treatment." (R. 25). In July 2014 and April 2015, "[h]e was alert and fully oriented with no noted mental status abnormalities," and in June and July 2015, "the claimant was fully oriented with no depression, anxiety, or agitation." *Id.* The ALJ summarized:

> This evidence shows that the claimant's affective and anxiety-related disorders were exacerbated by situational stressors in 2012 and lack of adherence to prescribed medication in 2013, but were significantly improved thereafter aside from an episode of apparent anger and hostility in April 2014. As previously noted, the record does not show that he had any subsequent problems with bipolar or anxiety disorders given his consistently normal mental status exams and lack of treatment. . . . The undersigned concludes from this evidence that the claimant was able to perform simple, routine, repetitive-type tasks although not at a production rate pace.

*Id.* The ALJ also included limitations in the RFC for making simple work-related decisions, interacting frequently with co-workers, interacting occasionally with supervisors and the public, and being off task no more than ten percent of the time. (R. 25–26). Dr. Choudry's opinion that Claimant has moderately severe limitations in the ability to maintain attention and concentration,

11

perform activities within a schedule, maintain regular attendance and be punctual, and complete a normal workday and workweek without interruptions and at a consistent pace is therefore inconsistent with the medical evidence.

Dr. Choudry's opinion was noted on a check box form with no specific findings or explanation, it is inconsistent with his own later observations, it addressed issues reserved to the Commissioner, and it is inconsistent with the other evidence. The ALJ adequately explained why he discounted the Medical Source Statement, and he did not err in weighing Dr. Choudry's opinion.

### 2. Dr. Reid

On October 2, 2013, Dr. Reid performed an "initial intake and follow-up assessment[]" of Claimant. (R. 473). She noted her opinions on a check-box form. (R. 470–73). The ALJ wrote:

> Dr. Reid reported that the claimant had moderate or marked limitations in most aspects of understanding and memory, sustaining concentration and persistence, social interaction, and adaptation, with substantial loss of his abilities to understand, remember, and carry out simple instructions; making judgments commensurate with the functions of unskilled work; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. She opined that the claimant needed intense treatment and was 'unable to perform in a work setting a present' [sic] (Exhibit 10F). While Dr. Reid's opinion is generally consistent with her treatment notes in August and September 2013, it was based on limited contact with the claimant and does not reflect the subsequent improvement in his mental status beginning in November of that year. In addition, her opinion that the claimant was unable to perform in a work setting is conclusory in nature and addresses an issue that is reserved to the SSA Commissioner.

(R. 26). Like in his analysis of Dr. Chaudry's opinion, the ALJ gave several reasons why he discounted Dr. Reid's opinion: (1) it was based on limited contact with Claimant, (2) it does not reflect Claimant's subsequent improvement, and (3) it addresses an issue reserved to the Commissioner. *Id.*

First, Dr. Reid's opinion was based on few instances of contact with Claimant. She wrote that after her initial intake and follow-up assessment, Claimant would be referred to an outpatient

psychiatrist because Dr. Reid does not "see patients in ongoing treatment." (R. 473). She wrote that Claimant's "regular psychiatrist/therapist will be able to assist with further information and/or recommendation." *Id.* Dr. Reid's opinion therefore appears to be based on only two instances of contact with Claimant—the initial intake and the follow-up assessment—and she was not his ongoing treating psychiatrist. *Id.* "The treatment relationship between the physician and the applicant" is one factor the ALJ may consider in weighing a physician's opinion, *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527), and here, Dr. Reid operated more as a consultative examiner than a treating source who could provide "a detailed, longitudinal picture" of Claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). The ALJ did not err in discounting her opinion.

Second, Dr. Reid's October 2013 opinion does not account for Claimant's later improvement. As described above, after April 2014, "the record does not show that [Claimant] sought or received any mental health treatment." (R. 25). His subsequent exams in July 2014 and April, June, and July 2015 showed no mental status abnormalities. *Id.*

Third, Dr. Reid checked boxes indicating that Claimant was mildly, moderately, or markedly limited in mental abilities. (R. 473). She thereby opined on an issue reserved to the Commissioner. S.S.R. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("[T]he issue of meeting the requirements of a listing is still an issue ultimately reserved to the Commissioner.").

The ALJ provided three adequate reasons for discounting Dr. Reid's opinion. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," or has failed to give a sufficient reason for the weight afforded a particular opinion.") (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Accordingly, the ALJ did not err in weighing the opinion.

13

**B.    The ALJ erred in failing to adequately discuss Listing 1.04.**

The ALJ found that Claimant's impairments did not meet or equal Listing 1.04, the listing

for disorders of the spine. (R. 20). Claimant contends the ALJ's conclusion is error because the

ALJ did not perform a detailed analysis. Pl.'s Mem. [DE-27] at 14–15. The court agrees.

The listings consist of impairments, organized by major body systems, that are deemed

sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a).

Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes

that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all

the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); S.S.R. 83-19, 1983

WL 31248, at *2 (Jan. 1, 1983) (rescinded in part). The burden of demonstrating that an

impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

To satisfy Listing 1.04A, a claimant must show a disorder of the spine "(e.g., herniated

nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda

equine) or the spinal cord" with "evidence of nerve root compression characterized by neuro-

anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated

muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is

involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R.

§ 404, subpt. P, app. 1, § 1.04.

When "there is at least conflicting evidence in the record" as to whether a Claimant satisfies

a listing, the ALJ must explain his determination that Claimant's impairment does not meet or

exceed the listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). The ALJ cannot

"summarily conclude" that a listing is not satisfied because "insufficient legal analysis makes it

14

impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* In *Radford*, the record showed "limited motion of the spine on at least four occasions, positive straight leg raises at least five times, and sensory reflex loss on at least three occasions," but it also showed "no weakness, sensory loss, or limitation of motion during some examinations." *Id.* at 296. The Court held that there was conflicting evidence requiring detailed explanation from the ALJ. *Id.*

Likewise, here, there is conflicting evidence as to whether Claimant meets Listing 1.04. The ALJ stated that Claimant does not have "a spinal disorder characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, as required by Medical Listing 1.04." (R. 20). That single statement is the extent of the ALJ's analysis, and it is internally inconsistent with the ALJ's other findings; the ALJ found that Claimant had the severe impairment of lumbar degenerative disc disease, (R. 19), and the ALJ noted that "an MRI scan of his lumbar spine showed only a small disc herniation at L5-S1 causing mild right neural foraminal stenosis." (R. 22–23). Additionally, the record shows that Claimant's DDD was characterized by lumbar spinal stenosis, as observed at multiple appointments and by multiple treatment providers. (R. 417, 437, 477, 546, 736). Claimant can point to evidence of spinal stenosis, meeting the first requirement of Listing 1.04.

As to the other requirements, the Commissioner concedes that Claimant "identifies evidence in the record of almost all of Listing 1.04A's elements," the exception being muscle weakness. Indeed, as Claimant argues, the record shows that he had disc herniation with foraminal stenosis (R. 417), bilateral radiculopathies (R. 419, 424, 426–27), positive straight leg raise (R. 423, 428, 431), loss of sensation (R. 428, 430–31), blunted reflexes (R. 428), and limited range of motion (R. 431).

15

Additionally, the record shows at least conflicting evidence of muscle weakness. On July 30, 2012, Dr. Choudy observed that Claimant was "positive for numbness and weakness in his leg." (R. 430). During that same examination, Dr. Choudy observed that "strength in lower extremities is equal and full." (R. 431). The evidence is therefore conflicting as to whether Claimant had muscle weakness. Because there was at least conflicting evidence as to each element of Listing 1.04, the ALJ was required to provide an explanation for his determination that Claimant does not meet that listing. *See Radford*, 734 F.3d at 295; *Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL 965626, at *5–6 (E.D.N.C. Mar. 4, 2015). The ALJ did not address each element to clarify why it is not met here. The ALJ's inadequate analysis of Listing 1.04 does not provide for meaningful review, and it requires remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-26] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-28] is DENIED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

Ordered, this the 14 day of December, 2018.

Robert B. Jones, Jr.
United States Magistrate Judge

16